# 22-2022

# United States Court of Appeals
## for the
## Fourth Circuit

MITCHELL GARNET EVANS, Executor of the Estate of
Sallie Copeland Evans,

*Plaintiff – Appellant,*

– v. –

UNITED STATES OF AMERICA,

*Defendant – Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA AT GREENVILLE

# CORRECTED BRIEF OF APPELLANT

WALTON EVERETT LUPTON
SLAUGHTER & LUPTON LAW, PLLC
5601 Virginia Beach Boulevard
  Suite 100
Virginia Beach, Virginia 23462
(757) 699-7101

*Counsel for Appellant*

CP  COUNSEL PRESS • VA – (804) 648-3664

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-2022        Caption: Mitchell Garnet Evans v. United States of America

Pursuant to FRAP 26.1 and Local Rule 26.1,

Mitchell Garnet Evans
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Walton Everett Lupton    Date: 10/13/2022

Counsel for: Appellant

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

STATEMENT OF JURISDICTION......................................................................... 1

STATEMENT OF ISSUES ........................................................................................ 2

STATEMENT OF THE CASE..................................................................................... 2

STATEMENT OF FACTS ......................................................................................... 3

SUMMARY OF ARGUMENT .................................................................................. 7

ARGUMENT ............................................................................................................. 9

STANDARD OF REVIEW ....................................................................................... 9

      I.     THE DISTRICT COURT ERRED IN GRANTING
            APPELLEE UNITED STATES' MOTION TO DISMISS
            UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)
            BECAUSE THE DISTRICT COURT HAS SUBJECT
            MATTER JURISDICTION OVER APPELLANT'S CLAIM ............ 9

      II.    TO THE EXTENT THAT THE DISTRICT COURT'S ORDER
            ADDRESSES APPELLANT'S MOTION TO DISMISS
            PURSUANT TO RULE 12(b)(6), A DISMISSAL IS
            ERRONEOUS BECAUSE APPELLANT'S AMENDED
            COMPLAINT SETS OUT A PRIMA FACIE CLAIM FOR
            NEGLIGENCE AGAINST APPELLEE ............................................20

CONCLUSION ...........................................................................................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**CASES**

*Al Shimari v. CACI Premier Tech., Inc.*,
 840 F.3d 147 (4th Cir. 2016) ....................................................................9, 20

*Auld v. Forbes*,
 309 Ga. 893 (2020) ..........................................................................................18

*Clatterbuck v. City of Charlottesville*,
 708 F.3d 549 (4th Cir. 2013) ..........................................................................2

*Council v. Dickerson's Inc.*,
 233 N.C. 472, 64 S.E.2d 551 (1951) ............................................................21

*Davidson and Jones, Inc. v. County of New Hanover*,
 41 N.C. App. 661, *disc. review denied*
 298 N.C. 295 (1979) ........................................................................................18

*Davidson v. Univ. of N.C. at Chapel Hill*,
 142 N.C. App. 544 (2001) ..............................................................................18

*Durden v. United States*,
 736 F.3d 296 (4th Cir. 2013) ..............................................................*passim*

*In re KBR, Inc.*,
 744 F.3d 326 (4th Cir. 2014) ..........................................................................9

*J.S. v. Attica Cent. Sch.*,
 386 F.3d 107 (2d Cir. 2004) ............................................................................9

*Kenney v. Wilson*,
 885 F.3d 280 (4th Cir. 2018) ..........................................................................2

*Kerns v. United States*,
 585 F.3d 187 (4th Cir. 2009) ..............................................................18, 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).......................................................................2

*Lumsden v. United States*,
555 F. Supp. 2d 580 (E.D.N.C. 2008) .......................................13, 14, 17, 19

*Mynhardt v. Elon Univ.*,
220 N.C. App. 368 (2012) ...............................................................18

*Pinnix v. Toomey*,
242 N.C. 358 (1955) ....................................................................18

*Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*,
47 N.C. App. 518 (1980) .............................................................19, 21

*Sheridan v. United States*,
487 U.S. 392 (1988)................................................................*passim*

*Smith v. Camel Cab Co.*,
227 N.C. 572 (1947) ....................................................................19

**STATUTES**

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1346 .........................................................................1

28 U.S.C. § 1346(b) .....................................................................10

28 U.S.C. § 1346(b)(1)..................................................................18

28 U.S.C. §§ 2671-2680 .................................................................10

28 U.S.C. § 2672 ........................................................................22

28 U.S.C. § 2680(h) ......................................................................9

**RULES**

Fed. R. Civ. P. 12(b)(1)......................................................................*passim*

Fed. R. Civ. P. 12(b)(6)......................................................................*passim*

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
### Docket No. 22-2022

| | | |
|---|---|---|
| **MITCHELL GARNET EVANS,** | ) | |
| **Executor of the Estate of Sallie** | ) | |
| **Copeland Evans,** | ) | |
| | ) | |
| **Appellant** | ) | **APPELLANT'S BRIEF** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Appellee** | ) | |
| _____ | ) | |

  Appellant, Mitchell Garnet Evans, Executor of the Estate of Sallie Copeland Evans, by counsel, files this brief in support of his appeal of the August 30, 2022 judgment and order of the United States District Court, Eastern District of North Carolina ("District Court") dismissing Appellant's wrongful death claim under the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 1346, *et seq.*, on the basis that the District Court lacked subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated herein, this Court should reverse the judgment of the District Court and remand the case for further proceedings.

## STATEMENT OF JURISDICTION

  This Court has jurisdiction over this matter and an appeal lies to this Court pursuant to 28 U.S.C. § 1291 as the District Court's Judgment of August 30, 2022 was a "final order" dismissing Appellant's claim for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) entered by the United States District

Court for the Eastern District of North Carolina.  As stated by the District Court in its August 30, 2022 Order, in considering Appellee's motion to dismiss pursuant to Rule 12(b)(1), the court should "accept the facts of the [Amended Complaint] as true as [the court] would in context of a Rule 12(b)(6) challenge." Order at 4, *citing Kenney v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018). Furthermore, general factual allegations may suffice on a motion to dismiss to allow a court to presume that the allegations embrace those specific facts that are necessary to support the claim. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013), *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

## STATEMENT OF ISSUES

I. **DID THE DISTRICT COURT HAVE JURISDICTION OVER THE CAUSE OF ACTION SET FORTH IN APPELLANT'S AMENDED COMPLAINT AND THUS ERR BY GRANTING APPELLEE'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)?**

II. **IF THE DISTRICT COURT'S DISMISSAL WAS BASED IN PART ON FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), DID THE APPELLANT STATE A CAUSE OF ACTION AGAINST APPELLEE?**

## STATEMENT OF THE CASE

Appellant filed a Notice of Claim on April 10, 2020. After receiving a denial of his claim by the Torts Claims Attorney on behalf of the Department of the Navy, dated December 8, 2020. JA18. Appellant filed his original Complaint in the District Court on April 8, 2021. JA1. The District Court entered a consent order allowing Appellant to file his Amended Complaint which was filed on August 27,

2021. JA6-JA26. Appellee filed its Motion to Dismiss (JA27-JA28) and Memorandum in Support (JA30-JA47) on September 22, 2021. Appellant filed a Memorandum in Response to United States' Motion to Dismiss on October 23, 2021. JA48-JA60. Appellee filed United States' Reply on November 24, 2021. JA61-JA71. The District Court referred Appellee's Motion to the magistrate judge on January 11, 2022. JA1. Oral arguments were presented by the parties to the magistrate judge on Appellee's Motion to Dismiss on February 18. 2022. JA72-JA97. The magistrate judge issued a Memorandum and Recommendation on June 6, 2022. JA98-JA108. Plaintiff filed objections to the Memorandum and Recommendations on June 17, 2022. JA109-JA115. The Appellee filed its Response on July 1, 2022. JA116-JA123. The District Court entered its Order (JA124-JA133) and Judgment (JA134) on August 30, 2022. Appellant noticed this Appeal on September 27, 2022. JA135.

## STATEMENT OF FACTS

Sallie Copeland Evans ("Decedent") was the grandmother of Isaiah Evans Ceaser ("Ceaser"). JA7. At the relevant times of March and April 2018, Cesaer was a lance corporal in the United States Marine Corps ("Marine Corps"). *Id.* On or about March 30, 2018, Ceaser, without permission, left his duty station at Fort Benning, Georgia where he and members of his unit were participating in a combat training school. Id. Upon information and belief, the Marine Corps characterized Cesar as an absentee, meaning he was absent without authority from his unit or

3

other required place of duty ("AWOL"). *Id.* Upon leaving his unit, Ceaser left a note stating that he was going to end it all and kill himself. *Id.* A classmate found Ceaser's note. *Id.* Ceaser's commanding officer, Marine Corps Captain Smith ("Smith") was aware of the note. Id. Pm April 1, 2018, Sergeant Galscow of Ceaser's unit contacted Nash County, North Carolina law enforcement officials notifying them that Ceasar had gotten into trouble and left a note indicating that he was going to end it all, but before committing suicide, Ceaser wanted to visit his mother, who was an inpatient at a medical facility in Halifax County, North Carolina. JA8. After leaving Fort Benning, Ceaser traveled to North Carolina. *Id.* Decedent, Mitchell Evans, Monica Evans, and Mattie Copeland Parker contacted Smith by telephone to advise him that Ceaser had returned to North Carolina and needed to be picked up by the Marine Corps. Id. Smith arranged for Ceaser to fly from Raleigh-Durham International Airport in North Carolina to Atlanta, Georgia, unsupervised, on April 5, 2018 and Ceaser boarded his flight on that day. *Id.* On or about April 10, 2018, Mitchell Evans, Monica Evans, and Samaria Evans learned that Ceaser had returned to North Carolina and was in Halifax County, North Carolina at the home of his grandfather, William Evans. *Id.* On or about April 10, 2018, Decedent, Mitchell Evans, and Monica Evans told Smith by telephone that Ceaser was in Halifax County, North Carolina and expressed concern and fear to Smith that something could happen. Id. On or about April 10, 2018, Decedent

asked Smith by telephone why the Marine Corps had not picked up Ceaser and asked Smith to have local North Carolina law enforcement officials pick up Ceaser, but Smith failed to do so. JA9. On or about April 11, 2018, Decedent and Monia Evans both spoke with Smith by telephone. Smith said that Ceaser was being investigated for fraud and that he, Smith, had found several letters and notes expressing Ceaser's intent of violence against himself and others from Ceaser that Smith considered disturbing. Smith stated that he was very concerned because of these notes' contents and advised that Decedent should be careful if she came in contact with Ceaser. *Id.* On or about April 11, 2018, Decedent again by telephone requested Smith to have Ceaser detained, but was advised by Smith that the Marine Corp had already exhausted a large amount of resources trying to pick up Ceaser at the airport and would not commit to making any further effort to find and detain Ceaser. *Id.* Approximately one week later, Mitchell Evans and Monica Evans spoke with Smith by telephone advising Smith that they had found grenade parts that they believed Ceaser had acquired and that Ceaser was making social media posts indicating that he had purchased guns. Id, JA24-JA25. Decedent and Monica Evans told Smith they were concerned because Ceaser was acting aggressive and was easily agitated and requested that the Marine Corps have Ceaser detained by local law enforcement officials. Decedent and Monica Evans advised [Smith] that they were concerned something would happen. Smith stated that this was

concerning, and he would see what he could do, but that the Marine Corps had already exhausted resources trying to have Ceaser picked up when Ceaser was supposed to fly to Georgia. JA9-JA10. On or about April 22, 2018, Decedent and Mitchell Evans transported Ceaser to RDU where they watched Ceaser board another flight to Atlanta, Georgia. On that same day, Decedent and Mitchell Evans told Smith that Ceaser was on a plane to Atlanta, Georgia and needed to be detained at the airport, that they and other family members had requested the Marine Corps numerous times to have the local law enforcement officials pick up Ceaser before something happened to him or someone else. Smith said he would see what he could do and call them back. *Id.* In a subsequent phone call on the same day, Smith advised that he could not have Ceaser detained at the airport, and that Ceaser would need to take a shuttle or a bus to the Marine Corps training location. Decedent again asked Smith why, since he was concerned about the suicide note, guns, and grenade parts, he could not just have local law enforcement officials detain Ceaser. JA10. On April 23, 2018, Ceaser returned to Halifax County, North Carolina instead of returning to his Marine Corps unit at Fort Benning, Georgia. Decedent again contacted Smith, who refused to take any action to have Ceaser detained and instructed Decedent to take Ceaser to Marine Corps Base Camp Lejeune in or near Jacksonville, North Carolina.  JA10. On or about April 23, 2018, Mitchell Evans saw Decedent crying and complaining that the

Marine Corps was not taking action and [Smith] had instructed her to drive Ceaser to Camp Lejeune. JA10. On April 23, 2018, Michell Evans sent a text message to Smith, stating "We put Isaiah on a plane yesterday flew him back to you once again And you didn't pick him up cause he's back here in NC at moms house She worried I'm worried Y'all need to pick his ASS up before something happens!!" JA10-JA11, JA26. On or about April 24, 2018, Smith again instructed Decedent to drive Ceaser to Marine Corps Base Camp Lejeune. JA11. While Decedent, at her home in Halifax County, North Carolina, was attempting to convince Ceaser to gather his belongings for the trip to Maine Corps Base Camp Lejeune, Ceaser shot Decedent in the back of her head with a 9mm pistol resulting in her death. JA11. Her dead body was discovered several days later. *Id.* When law enforcement officials arrested Ceaser, Ceaser possessed Decedent's car and credit card and explosive devices. Id. The District Court adopted the facts set forth by the magistrate in the Memorandum & Recommendation. JA125-JA126.

## SUMMARY OF ARGUMENT

Appellant seeks money damages from Appellee for the wrongful death of Sallie Copeland Evans ("the Decedent"), who was shot and killed by her grandson Isaiah Evans Ceaser ("Ceaser"), an AWOL servicemember on active duty of the United States Marine Corps ("Marine Corps") at the time of Decedent's death. In his Amended Complaint, Appellant alleges that the Decedent's death was caused

by the negligence of Marine Corps members while acting within the scope of their office or employment, under circumstances where the United States, if a private person, would be liable to Appellant in accordance with the law of the State of North Carolina. JA6-JA16. Appellant alleges that a proximate cause of the Decedent's death was the negligence of Marine Corps members, specifically Smith in the acts and omissions of Smith in response to requests by the Decedent, the Decedent's family, and others for protection from Ceaser, whom the Marine Corps and Smith knew or should have known constituted an imminent danger to the physical safety of the Decedent, the Decedent's family, Ceaser himself, and others. *Id.* The final act of negligence that Appellant alleges was Smith instructing the Decedent to drive Ceaser to Marine Corps Base Camp Lejeune. *See id.* Ceaser subsequently shot the Decedent in her head causing her death while the Decedent was trying to persuade Ceaser to allow her to drive him to Camp Lejeune per Smith's instruction to the Decedent. *See id.*

Appellant has alleged a prima facie case under the FTCA. Although this Court affirmed the District Court's dismissal (summary judgment) of a similar FTCA claim in *Durden v. United States*, 736 F.3d 296 (4th Cir. 2013), bases for this Court's decision in *Durden* are not present in this case. The District Court erred in granting the Appellee's motion to dismiss under Rule 12(b)(1) as the facts alleged are significantly different than those alleged in *Durden*; the Appellant has

alleged facts that would provide a cause of action in negligence against "Captain Smith" (Smith) if he were a private individual under North Carolina law independent of Smith's military status or Ceaser's military status pursuant to the United States Supreme Court's opinion in *Sheridan v. United States*, 487 U.S. 392, 400 (1988). To the extent that this Court may analyze the District Court's judgment as dismissal pursuant to Rule 12(b)(6), a dismissal is also improper because Appellant set out a viable claim under the FTCA.

## ARGUMENT

## STANDARD OF REVIEW

As this appeal involves a motion to dismiss for lack of subject matter jurisdiction, this Court should review the District Court's dismissal *de novo*. *See Durden v. United States*, 736 F.3d 296 (4th Cir. 2013); *see also Al Shimari v. CACI Premier Tech., Inc.*, 840 F.3d 147 (4th Cir. 2016), *citing In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014); *see also J.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2004).

**I.    THE DISTRICT COURT ERRED IN GRANTING APPELLEE UNITED STATES' MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1) BECAUSE THE DISTRICT COURT HAS SUBJECT MATTER JURISDICTION OVER APPELLANT'S CLAIM.**

Appellee moved the District Court to dismiss this action under Rule 12(b)(1) on the ground that Appellant's action is barred by 28 U.S.C. § 2680(h). However,

this "intentional tort exception" of the FTCA does not apply to all claims arising out of assaults or batteries; it applies only to claims arising out of assaults or batteries by federal employees. *See Sheridan v. United States*, 487 U.S. 392, 400 (1988). And the exception does not apply to all FTCA claims in which harm was caused by an assault or battery by a federal employee. The negligence of other federal employees who allow a foreseeable assault or battery by a federal employee to occur can furnish a basis for FTCA liability that is entirely independent of the assailant's employment status. *Id*. at 401. Furthermore, 28 U.S.C. § 1346(b) provides that subject to the provisions of 28 U.S.C. §§ 2671-2680, the district courts...shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages...for...death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his...employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. *See Sheridan* at 395.

In *Sheridan*, a drunk off-duty naval medical aide named Carr fired rifle shots into an automobile near a naval hospital. The FTCA claim was based on the negligence of naval corpsmen in allowing Carr to leave the hospital while possessing a loaded rifle. The Court held that assuming that petitioner's version of the facts would support recovery under Maryland law on a negligence theory if the

naval hospital had been owned and operated by a private person, the mere fact that Carr happened to be an off-duty federal employee would not provide a basis for protecting the Government from liability that would attach if Carr had been a non-government employed patient or visitor in the hospital. *See Sheridan* at 402. The fact that Carr's behavior is characterized as an intentional assault rather than a negligent act is also irrelevant. *See id*. The court in Sheridan found that Carr's status as a federal employee instead of a hospital patient or visitor should not provide a basis for protecting the government from liability. *See id.* Thus, the Supreme Court held that "[b]ecause neither Carr's employment status nor his state of mind has any bearing on the basis for Appellants' claim for money damages, the intentional tort exception to the FTCA is not applicable in this case." *Id*. at 403.

In *Durden v. United States*, 736 F.3d 296 (4th Cir. 2013), this Court affirmed the District Court's dismissal of Durden's FTCA claim. In *Durden*, an Army member named Pernell raped the plaintiff, Maria Durden, in her Fort Bragg, North Carolina home. Durden brought an FTCA action based on the Army's negligence. In her complaint, Durden alleged that the Army was aware that Pernell posed a safety risk, had a duty to protect her, and breached that duty. The United States moved for dismissal for lack of subject matter jurisdiction and for failure to state a claim. The United States asserted that the Army breached no duty to Durden under North Carolina law and that the claim was barred to by the FTCA's

intentional tort exception. Holding that Durden's negligence theories failed, and that the intentional tort exception applied, the district court granted the motion to dismiss. This Court held that Durden's negligence theories failed and affirmed the dismissal but held that the district court erred in dismissing the case under the alternative basis of the intentional tort exception.[1]

In *Durden*, this Court noted that the district court held that Pernell's government employee status was a "but-for" element of Durden's negligence claim, so the court barred her claim. *Durden* at 308-09. The district court reasoned that since the Army's knowledge of Pernell's criminal propensities came solely from his government employment, the Army's breach of any duty to Durden was not independent of the employment. *Id.* at 309. This Court, in finding that the district court's but-for reasoning was flawed, stated:

> The same could be said, however, about the corpsmen's knowledge of the intoxicated tortfeasor in *Sheridan*: presumably, the corpsmen alleged to have acted negligently would not have been present in the naval hospital that night —and thus would not have gained knowledge of the drunken tortfeasor and put themselves in a position to be negligent in the first instance—were it not for their government employment.

*Id.*

---

[1] The district court dismissed the case for lack of subject matter jurisdiction, but this Court found that the district court's statement that the dismissal was for lack of subject matter jurisdiction was technically incorrect and that the district court considered the negligence issue as if it were the basis of a Rule 12(b)(6) motion that had been converted into a summary judgment motion. So this Court applied the standard for granting summary judgment: whether the government was entitled to judgment as a matter of law.

*Lumsden v. United States*, 555 F. Supp. 2d 580 (E.D.N.C. 2008) is discussed by this Court in its opinion in *Durden.* In *Lumsden*, the FTCA complaint alleged that Marine Corps agents or officers impounded Marine Corps Private Lucas Borges' car, which contained cylinders of government ether, knowing that he had acquired and inhaled government ether on several occasions. Several days later, Marine Corps officers released to Borges the car, still containing the cylinders of ether. Then Borges became intoxicated on ether and drove in the wrong lane of a highway, causing a head-on collision with another car. One person in the other car was killed and others were injured. Borges was convicted in state court of second-degree murder, four counts of assault with a deadly weapon, and driving while impaired.

The *Lumsden* complaint alleged negligence by the United States' officers and agents who released to Borges the car containing ether, knowing of his propensity to abuse ether and become dangerously intoxicated. The government moved to dismiss the complaint under Rule 12(b)(1) on the ground of the intentional tort exception and under Rule 12(b)(6) on the ground that the complaint did not state a claim. The district court denied the motion to dismiss.

On the Rule 12(b)(1) issue, the court in *Lumsden* found that the complaint could not be reasonably read to allege that the plaintiffs were seeking relief arising from an intentional assault by Borges. *Id.* at 584. The court further found that

Borges's government employment was irrelevant to the plaintiff's liability theory. *Id.* Quoting *Sheridan*, the court held that because neither Borges's employment status nor his state of mind had any bearing on the claim for money damages, the FTCA intentional tort exception was not applicable. *Lumsden* at 585. The court denied the Rule 12(b)(1) motion to dismiss as "baseless." *Id.*

The bases for this Court's affirmation of the dismissal of Durden's complaint are not present in this case. First, this Court found in *Durden* that Pernell's repeated expressed desires to kill himself and members of his unit (viewed collectively) and Pernell's September 10, 2009 burglary and assault were not sufficient to render Pernell's rape of Durden "foreseeable" under North Carolina law. *Durden* at 302. This Court held that even if Purnell's desires tended to show that he had a propensity for violence, Durden failed to demonstrate how such desires fall within the purview of "prior criminal activity." *Id*. at 303. Second, this Court found that Durden did not demonstrate that the Army should have gleaned from those desires the notion that Pernell would sexually assault any tenant on Fort Bragg, let alone Durden specifically. *See id.* Third, this Court found that Durden did not identify any additional criminal activity that should have alerted the Army that it was foreseeable that she would be attacked. *Id. at* 304.

The facts alleged by Durden are different than those alleged by the Appellant. Durden's claim of negligence was based on general omissions of the

Army, whereas Appellant has alleged facts showing specific actions by the Marine Corps and Smith that show notice and affirmative actions. Appellant has alleged facts that not only made Ceaser's assault of the Decedent foreseeable, but allegations that Smith had actual notice and knowledge of Ceaser's dangerous conduct and the danger he posed to others prior to Smith's negligence in instructing the Decedent to transport Ceaser to Camp Lejeune (i.e., Ceasar's note, Sergeant Glasgow of Ceaser's unit communications with Nash County, North Carolina law enforcement, multiple telephone conversations between Smith and the Decedent, Mitchell Evans (Plaintiff), Monica Evans, and Mattie Copeland Parker, including the discovery of grenade parts in possession of Ceaser and social media postings by Ceaser indicating that he had purchased guns, statements to Smith that Ceaser was acting aggressively and was easily agitated, Smith's expression of concern; Smith's statements that Smith had found several letters and notes from Ceaser that Smith considered disturbing, letters and notes that expressed Ceaser's intent of violence; and the text sent by Mitchell Evans to Smith. According to allegations of Appellant's Amended Complaint, the Marine Corps' and Smith's negligence in response to the repeated cries for help for protection from the dangerous Ceaser reached a high point of disgrace in the final days of the Decedent's life. By then, Smith had personal knowledge and was notified by others that Ceaser posed an immediate risk of harm to the Decedent and

others. See JA7-JA11. Smith had even expressed his concern to the Decedent and Appellant's wife. *Id.* On April 23, 2018, Ceaser was back in Halifax County, North Carolina, after boarding a plane at Raleigh-Durham International Airport ("RDU") to fly to Atlanta the day before, supposedly to return to his military duty station. JA10. That day the Decedent again contacted Smith, and Smith again refused to take any action to have Ceaser detained. JA10. Instead, Smith instructed the Decedent to take Ceaser to Camp Lejeune in or near Jacksonville, North Carolina. JA10. On or about April 23, 2018, Mitchell Evans saw the Decedent crying, and she was complaining that Smith had instructed her to drive Ceaser to Camp Lejeune. JA11. Plaintiff then sent the cited text message to Smith. Approximately one day later, Smith again instructed the Decedent to drive Ceaser to Camp Lejeune. Then, while the Decedent was with Ceaser at her Halifax County home attempting to convince Ceaser to gather his belongings for the trip to Camp Lejeune, Ceaser shot Decedent in the head with a 9 mm pistol, killing her. Unlike the facts alleged by Appellant, this Court found in *Durden* that (1) Parnell had been released from civilian confinement for more than six weeks prior to raping Durden, and (2) that there was nothing in the record to indicate that the Army should have known that Pernell was a threat to Durden's safety based solely on the September 10, 2009 incident or his prior expressed desires to kill himself and members of his unit (c.f., rape). *See Durden* at 306. This Court stated:

> [i]t might be a different case if the Army knew that it was one of its own soldiers, and Pernell specifically, that committed the 2008 and 2009 sexual assaults in Fayetteville. Under those circumstances, the Army may have had reason to know that Pernell was a serial offender and thus owed to Durden a duty to control Purnell upon his release from civilian confinement. C.f. [*Lumsden*] at 582 ("the Marine Corps, through its agents or officers, were aware that [the tortfeasor] had, on several occasions, acquired and inhaled the chemical compound, ether, belonging to the Government."). *Durden* at 306.

Unlike the allegations in *Durden*, Appellant alleged in the Amended Complaint facts that the Marine Corps, specifically including Smith, knew that Ceaser constituted an immediate risk of harm, including death. The Amended Complaint alleges that Smith instructed the Decedent to Smith instructed to drive Ceaser to Camp Lejeune on several occasions having been informed of specific facts showing that Ceaser posed an imminent danger. The Amended Complaint alleges facts that Smith knew or should have known Caesar would not want to take that trip. Foreseeably, Ceaser resisted the trip by committing a violent act (i.e., shooting the Decedent).

Appellant's claim does not depend on Ceaser's status as a government employee. The allegations of the Amended Complaint are that a proximate cause of the Decedent's death was Smith's repeatedly instructing her to get the dangerous Ceaser into a car for a trip to a location (military base) to which, as shown by his actions to Smith, he did not want to go. Smith undertook a duty and acted negligently with specific prior knowledge of the danger that Ceaser was

whether Ceaser was a Marine or not under North Carolina law. As conceded by Appellee in United States' Memorandum in Support of its Motion to Dismiss, North Carolina law applies to Appellant's FTCA claim; although Smith and other Marine Corp personnel were physically in Georgia when the negligent acts were committed, Georgia choice-of-law applies that law of the place of injury (i.e., North Carolina). See United States' Memorandum in Support of Motion to Dismiss at 9, *citing Kerns*, 585 F.3d at 194, *citing* 28 U.S.C. § 1346(b)(1); *Auld v. Forbes*, 309 Ga. 893, 894 (2020). The voluntary undertaking theory has been consistently recognized in North Carolina, although it is not always designated as such. *Mynhardt v. Elon Univ.*, 220 N.C. App. 368 (2012), *citing Davidson v. Univ. of N.C. at Chapel Hill*, 142 N.C. App. 544, 558-559 (2001), *citing Pinnix v. Toomey*, 242 N.C. 358, 362 (1955); *Davidson and Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 666, *disc. review denied* 298 N.C. 295 (1979), "recognizing that '[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence'" *Mynhardt* at 372.

> The undertaking theory has been described as follows: [a]kin to the special relationship exceptions is the "undertaking" theory implicated when a defendant voluntarily "undertakes" to provide needed services to the plaintiff when otherwise she would have no obligation. The agreement may arise from a binding contract between the parties or from a gratuitous promise, unenforceable in contract. *Id.* at 372-373, *citing Logan* 2.20, at 27, *citing Davidson* at 558-559.

The North Carolina Supreme Court held in *Smith v. Camel Cab Co.*, 227 N.C. 572, 574 (1947) that a common carrier can be liable for a third-party assault where the injury was reasonably foreseeable and within the scope of the special relationship, i.e., in transit. As noted by this Court in *Durden*, under certain circumstances, one who undertakes to render service to another which he should recognize as necessary for the protection of a third person, or his property, is subject to liability to the third person for injuries resulting from his failure to exercise reasonable care in such undertaking. *Durden* at 305, *citing Quail Hollow E. Condo. Ass'n v. Donald J. Scholz Co.*, 47 N.C. App. 518 (1980).

Furthermore, a "but-for the assailant's status as an active-duty service member, Decedent's death would not have occurred" argument was made previously by the United States and rejected in *Sheridan*, *Durden*, and *Lumsden* cases. In *Sheridan*, "but-for" Carr's employment status, he would not have been at the hospital. In *Durden*, "but-for" Pernell's employment status as a soldier, the Army would not have had any involvement with him. In *Lumsden*, "but-for" Borges' employment status as a Marine, he would not have had government ether, and the Marine Corps would not have had any involvement with his car. The court in *Lumsden* found that Borges's government employment was irrelevant to the plaintiff's liability theory. Since that was true in *Lumsden*, it is surely also true in this case.

Because the intentional tort exception to the FTCA is inapplicable in this case, the District Court erred in granting Appellee's motion to dismiss under Rule 12(b)(1). Furthermore, "'when the jurisdictional facts and the facts central to a tort claim are inextricably intertwined,' the district court ordinarily should withhold a determination regarding subject matter jurisdiction and proceed to the merits of the case." *Al Shimari*, 840 F.3d at 155, *citing Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009).

**II.      TO THE EXTENT THAT THE DISTRICT COURT'S ORDER ADDRESSES APPELLANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), A DISMISSAL IS ERRONEOUS BECAUSE APPELLANT'S AMENDED COMPLAINT SETS OUT A PRIMA FACIE CLAIM FOR NEGLIGENCE AGAINST APPELLEE.**

The last paragraph of the district court's order concludes, "[b]ased on the foregoing, defendant's motion (DE18) is GRANTED. This action is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1)." Order at 10.  However, the district court discussed Appellee's Rule 12(b)(6) motion in its order. To the extent the district court addressed Appellee's Rule 12(b)(6) motion, the Appellee's Rule 12(b)(6) motion should also be denied because the Amended Complaint clearly alleges a cause of action against Appellee. North Carolina "law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm

and calls a violation of that duty negligence." *Council v. Dickerson's Inc.*, 233

N.C. 472, 474, 64 S.E.2d 551, 553 (1951).

> As a general proposition of the law of torts, it is settled that, under
> certain circumstances, one who undertakes to render services to
> another which he should recognize as necessary for the protection of a
> third person, or his property, is subject to liability to the third person,
> for injuries resulting from his failure to exercise reasonable care in
> such undertaking.[2]

*Quail Hollow East Condominium Asso. v. Donald J. Scholz Co.*, 47 N.C. App. 518,
522, 268 S.E.2d 12, 15 (1980).

The allegations in Appellant's Amended Complaint show that Smith entered

upon an active course of conduct in his dealings with the Decedent and her family.

In his Amended Complaint, Appellant has alleged that, under North Carolina law,

the Marine Corps assumed the legal right and duty to apprehend and control Ceaser

and protect the Decedent and others from him). Appellant has also alleged that,

under North Carolina law, by instructing the Decedent to drive or take Ceaser to

Camp Lejeune, Smith voluntarily assumed a legal duty to protect the Decedent

from Ceaser. Furthermore, Appellant has alleged that when Smith entered upon the

active course of conduct of instructing the Decedent to drive or take the Decedent

to Camp Lejeune, North Carolina law imposed upon him a positive duty to

exercise ordinary care to protect the Decedent from harm.

---

[2] In recognizing the assumption of duty exception, *Durden* quotes from this
sentence.

Appellant cannot prevail in this FTCA action unless the United States, if a private person, would be liable to Appellant in accordance with North Carolina law. 28 U.S.C. § 2672. Appellant has alleged that to be true and has alleged specific facts supporting that proposition. As stated by the court in *Sheridan* and this Court in *Durden*, the pertinent issue is whether the Marine Corps (or Smith in particular), if a private person, would be liable to Appellant under North Carolina law in these circumstances. If, under North Carolina law, the Marine Corps or Smith voluntarily assumed a duty to protect the Decedent, and a breach of that duty proximately caused the Decedent's death, then Appellee is liable for the Decedent's wrongful death. Appellant has pled, among other allegations, that Smith was negligent in instructing the Decedent to drive or take Ceaser to Camp Lejeune when Smith knew or should have known that Ceaser posed an immediate risk of harm, including death, to himself, the Decedent, or others and that the negligence of Smith was a proximate cause of the Decedents' death. According to the allegations of the Amended Complaint, a direct result of those instructions was the Decedent's death. The allegations of the Amended Complaint would be sufficient state a claim under North Carolina law if the Marine Corps or Smith were a private person. Appellant has alleged that the Marine Corps had the ability and legal authority to control Ceaser. The lack of an allegation that the Marine

Corps had actual control over Ceaser "during the time relevant to the complaint" has no legal consequence.

Smith undertook and assumed a duty to the Decedent. According to the facts alleged in the Amended Complaint, Smith clearly communicated to the Decedent that "Marine Corps had exhausted substantial resources trying to pick Ceaser up at the airport and would not commit to doing anything else."  JA118.  Subsequently, a few days after this conversation, Ceaser's family called Smith to ask why Ceaser had not been picked-up, notifying Smith that they found grenade parts that they believed belonged to Ceaser and that Ceaser was acting aggressively, was easily agitated, and was posting on social media that he had purchased guns to which Smith replied that these were concerning developments and he would see what *he* could do, but would not commit to doing anything in particular in that conversation. *Id*. Then about three weeks after Ceaser arrived back in North Carolina, Smith told Ceaser's family that he could not have Ceaser detained at the Atlanta airport and that Ceaser would have to make his own way back to Fort Benning. *Id*.  After Smith made these statements to Decedent and Ceaser's family indicating that the Marine Corp could not "commit to doing anything else," Smith then instructed Decedent, a civilian, to transport Ceaser to Camp Lejeune. *See id.* Prior to his instruction to the Decedent, Smith had notice that Ceaser posed an imminent danger to others, including the Decedent, when Smith received the text

message previously quoted. Smith's prior statement to the Decedent that the Marine Corps could not commit to doing anything else and Smith's other statements indicating that Ceaser had to make his own way back to Fort Benning illustrate that his subsequent conversation with the Decedent to transport Ceaser to Camp Lejeune was undertaking a duty. Smith undertook (assumed) this duty after expressing the limitations of the Marine Corps capacity or ability to detain Ceaser or the limits of his authority as Ceaser's officer to the Decedent independent of Ceaser's employment status as a Marine.

Because Appellant has stated a valid FTCA claim, this Court should find that that District Court committed reversible error in dismissing Appellant's claim.

## CONCLUSION

For all the foregoing reasons, the Judgment of the United States District Court for the Eastern District of North Carolina should be reversed, and the case remanded for a trial on the merits. Appellant respectfully requests oral argument.

This the 18th day of January 2023.

MITCHELL GARNETT EVANS

/s/ W. Everett Lupton
W. Everett Lupton
Slaughter & Lupton Law, PLLC
5601 Virginia Beach Boulevard,
  Suite 100
Virginia Beach, VA 23462
Phone: (252) 439-0700
Fax: (252)-689-8400
elupton@slaughterlupton.com
NC State Bar No.: 35762
*Attorney for Appellant*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of
the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
statement, table of contents, table of citations, statement regarding oral
argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*5,955*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*]
lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using
[*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state
name and version of word processing program*] with [*state number of
characters per inch and name of type style*].

Dated: <u>January 18, 2023</u>          <u>/s/ W. Everett Luptoon</u>
                                        *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 18th day of January, 2023, I caused this

Corrected Brief of Appellant to be filed electronically with the Clerk of the Court

using the CM/ECF System, which will send notice of such filing to the following

registered CM/ECF users:

Sharon C. Wilson
OFFICE OF THE U.S. ATTORNEY
150 Fayetteville Street, Suite 205
Raleigh, North Carolina 27601
(919) 856-4530

*Counsel for Appellee*

/s/ W. Everett Lupton
*Counsel for Appellant*