No. 22-2022

# United States Court of Appeals
# for the Fourth Circuit

———

**MITCHELL GARNET EVANS,**
*Appellant,*

**v.**

**UNITED STATES OF AMERICA,**
*Appellee.*

———

*On Appeal from the United States District Court
for the Eastern District of North Carolina*

## RESPONSE BRIEF OF THE UNITED STATES

MICHAEL F. EASLEY, JR.
*United States Attorney*

BY:   SHARON C. WILSON
*Assistant United States Attorney*

150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone:  (919) 856-4530

*Attorneys for Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT OF JURISDICTION .................................................... 1

STATEMENT OF ISSUES ....................................................................... 2

STATEMENT OF CASE ........................................................................... 3

STATEMENT OF FACTS .......................................................................... 4

SUMMARY OF ARGUMENT .................................................................. 8

ARGUMENT ............................................................................................ 11

I.    **THE DISTRICT COURT PROPERLY GRANTED THE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE ITE PRECLUDES FTCA WAIVER OF SOVEREIGN IMMUNITY.** ............................................................ 11

     A.    Standard of Review .................................................................. 11

     B.    Discussion of Issue. ................................................................ 11

         1.    Evans Failed to Meet His Burden to Show a Waiver of Sovereign Immunity under the FTCA. ........................................................................ 11

         2.    The ITE Bars Evans' FTCA Claim. ............................... 13

         3.    The District Court's Ruling Did Not Violate The Standard of Review ........................................................ 16

II.   **THE FTCA CLAIM PROPERLY IS DISMISSED FOR EVANS' FAILURE TO PLEAD A PLAUSIBLE CLAIM UNDER NORTH CAROLINA LAW.** ........................................................................... 18

     A.    Standard of Review .................................................................. 18

     B.    Discussion of Issue. ................................................................ 18

    1.    North Carolina Law Applies to the FTCA Claim Alleged.............................................................. 18

    2.    The United States Did Not Owe A Duty to Decedent Under North Carolina Substantive Law. ................................................................. 19

        i.    The United States Did Not Assume a Duty to Decedent....................................................20

       ii.    No North Carolina Authority Supports Employer Liability Under the Facts Pled ......................................25

CONCLUSION.......................................................... 26

CERTIFICATE OF COMPLIANCE ......................................... 27

# TABLE OF AUTHORITIES

## Cases

Auld v. Forbes,
  309 Ga. 893 (2020) .................................................................... 18

Bullock v. Napolitano,
  666 F.3d 281 (4th Cir. 2012) ..................................................... 11

Davidson v. Univ. of North Carolina,
  142 N.C. App. 544 (2001) .......................................................... 21

Durden v. United States,
  736 F.3d 296 (4th Cir. 2013) ............................................. passim

F.D.I.C. v. Meyer,
  510 U.S. 471 (1994) .................................................................... 11

Fussell v. N.C. Farm Bureau Mut. Ins. Co.,
  364 N.C. 222 (2010) ................................................................... 21

Kearns v. United States,
  585 F.3d 187 (4th Cir. 2009) ................................................16, 17

Kerr v. Marshall Univ. Bd. of Governors,
  824 F.3d 62 (4th Cir. 2016) ....................................................... 18

Quail Hollow E. Condo Ass'n v. Donald J. Scholz Co.,
  47 N.C. App. 518 (N.C. Ct. App. 1980).............................20, 24

Richards v. United States,
  369 U.S. 1 (1962)........................................................................ 18

Santana, Inc. v. Levi Strauss & Co.,
  674 F.2d 269 (4th Cir. 1982) ..................................................... 18

Scadden v. Holt,
  733 S.E.2d 90 (N.C. Ct. App. 2012) .......................................... 19

Sheppard v. Visitors of Va. State Univ.,
  993 F.3d 230 (4th Cir. 2021) ..................................................... 18

Sheridan v. United States,
   487 U.S. 392 (1988) ......................................................... passim

Stein v. Asheville City Bd. of Educ.,
   360 N.C. 321 (2006) .........................................................19, 21

Suter v. United States,
   441 F.3d 306 (4th Cir. 2006) ............................................11, 12

Tankersley v. Almand,
   837 F.3d 390 (4th Cir. 2016) ................................................. 18

United States v. Johnson,
   410 F.3d 137 (4th Cir. 2005) ................................................. 16

United States v. Orleans,
   425 U.S. 807 (1976) .............................................................. 11

United States v. Sherwood,
   312 U.S. 584 (1941) .............................................................. 11

Welch v. United States,
   409 F.3d 646 (4th Cir. 2005) ................................................. 12

## Statutes

10 U.S.C. § 371 ......................................................................... 16

18 U.S.C. § 1385 (2000) ............................................................. 16

28 U.S.C. § 1291 ......................................................................... 1

28 U.S.C. §§ 1346 ....................................................................... 3

28 U.S.C. §§ 1346(b) ................................................................... 2

28 U.S.C. §§ 1346(b)(1) .........................................................12, 18
28 U.S.C. § 2680(h)………………………………………………………..2

## Rules

Fed. R. Civ. P. 12(b)(1) ........................................................... 3, 16

Fed. R. Civ. P. 12(b)(6) ....................................................... passim

## STATEMENT OF JURISDICTION

Appellant, Mitchell Evans (Evans), Executor of the Estate of Sallie Copeland (Decedent), appeals the district court's dismissal of his action for lack of subject matter jurisdiction. The district court granted Appellee, United States' (United States), motion on August 30, 2022. J.A. 124-33. Evans timely filed a notice of appeal on September 27, 2022. J.A. 135-36. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Whether the district court properly dismissed for lack of subject matter jurisdiction because the intentional torts exception (ITE), 28 U.S.C. § 2680(h), precludes waiver of the United States' sovereign immunity under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b); 2671, <u>et</u> <u>seq.</u>

2.    Whether Evans failed to plead a plausible negligence claim under controlling substantive North Carolina law.

# STATEMENT OF CASE

On August 27, 2021, Evans filed an amended complaint against the United States under the FTCA, 28 U.S.C. §§ 1346, 2671, <u>et seq</u>. J.A. 6-26.

On September 22, 2021, the United States filed a motion to dismiss for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1) and, in the alternative, for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). J.A. 27-28. In support of the motion, the United States filed a memorandum of law. J.A. 30-47. On October 25, 2021, Evans filed a response. J.A. 48-60. On November 24, 2021, the United States filed a reply. J.A. 61-71.

On January 11, 2022, the district court referred the motion to the Magistrate Judge. J.A. 4. On February 18, 2022, the Magistrate Judge held oral argument on the motion. J.A. 4; J.A. 72-97. On June 6, 2022, the Magistrate Judge issued a memorandum and recommendation (M&R). J.A. 98-108. On June 17, 2022, Evans filed his objections to the M&R. J.A. 109-15. On July 1, 2022, the United States filed its response to Evans' objections. J.A. 116-23. On August 30, 2022, the district court granted the motion, thereby dismissing this matter for lack of subject matter jurisdiction. J.A. 124-33.

On September 27, 2022, Evans filed a notice of appeal. J.A. 135-36.

# STATEMENT OF FACTS[1]

In March and April 2018, Lance Corporal Isaiah Evans Ceaser (Ceaser), Decedent's grandson and Evans' nephew, was on active duty with the United States Marine Corps (Marines). J.A. 7, ¶¶ 8-10. On or about Friday March 30, 2018, without authorization, Ceaser left his duty station at Fort Benning, Georgia, where his unit and his commander Captain Smith were participating in "combat training school." J.A. 7, ¶ 10. At some point in time, Captain Smith "was made aware of the note" Ceaser left "stating he was going to end it all and kill himself." J.A. 7-8, ¶¶ 10-11.

On Sunday April 1, 2018, at 9:23 p.m., "Sergeant Glasgow of Ceaser's unit" notified Nash County, North Carolina law enforcement, "where Ceaser's girlfriend and other friends lived . . . that Ceaser had gotten into trouble and left a note indicating he was going to end it all, but before committing suicide, Ceaser wanted to visit his mother . . . [who] was an inpatient in a medical facility in Halifax County, North Carolina." J.A. 8, ¶ 11; J.A. 22.

On an unspecified date, Evans and other family members, including Decedent, notified Captain Smith that Ceaser "had returned to North Carolina and needed to be picked up by the Marine Corps." J.A. 8, ¶12. Captain Smith arranged for Ceaser to fly "unsupervised" from Raleigh Durham Airport (RDU Airport) to the Atlanta Airport, and Ceaser boarded the flight on April 5, 2018. J.A. 8, ¶¶ 13-14.

---

[1]   All factual allegations were assumed to be true for purposes of the motion to dismiss.

On or about April 10, 2018, Evans and other family members learned that Ceaser was staying at his grandfather's home in neighboring Halifax County. J.A. 8, ¶ 15. At that time, Evans and other family members, including Decedent, told Captain Smith "that Ceaser was in Halifax County, North Carolina and that they were concerned and afraid something could happen." J.A. 8, ¶ 16. Decedent asked Captain Smith why the Marines had not picked up Ceaser and asked Captain Smith to have local law enforcement pick up Ceaser. J.A. 9, ¶ 17.

On April 11, 2018, Captain Smith told Decedent and another family member that Ceaser was being investigated for fraud and that Ceaser wrote disturbing letters/notes expressing "Ceaser's intent of violence against Ceaser and others." J.A. 9, ¶ 18. Captain Smith stated that "he was very concerned because of these notes' contents and advised that Decedent should be careful if she came into contact with Ceaser." J.A. 9, ¶ 18. Decedent again requested that Smith "have Ceaser detained. [Captain] Smith advised her that the Marine Corps had already exhausted a large amount of resources trying to pick up Ceaser at the airport and would not commit to making any further effort to find and detain Ceaser." J.A. 9, ¶ 19.

On April 17, 2018, Evans and another family member called Captain Smith, asked why the Marines had not picked up Ceaser, advised they "found grenade parts they believed Ceaser had acquired and that Ceaser was making posts on Facebook indicating he had purchased guns." J.A. 9-10, ¶ 20. Decedent and the other family member told Captain Smith "they were concerned something would happen," Ceaser was "acting aggressive and easily agitated," and

they "requested that the Marine Corps have Ceaser detained by local law enforcement." J.A. 9-10, ¶ 20. Captain Smith "stated that this was concerning, and he would see what he could do, but that the Marine Corps had already exhausted resources trying to have Ceaser picked up when Ceaser was supposed to fly to Georgia." J.A. 9-10, ¶ 20.

On or about April 22, 2018, Evans and Decedent "transported Ceaser to [RDU], where they watched Ceaser board another flight to Atlanta, Georgia." J.A. 10, ¶ 21. Thereafter, Evans and Decedent "told [Captain] Smith that Ceaser was on a plane to Atlanta, Georgia and needed to be detained at the airport. [Captain] Smith again stated that he did not have the resources to pick up Ceaser at the airport." J.A. 10, ¶ 22. Captain Smith "said he would see what he could do and would call them back." J.A. 10, ¶ 22. Later that day, Captain Smith "advised that he could not have Ceaser detained at the airport, and Ceaser would need to take the shuttle or bus to the Marine Corps training location." J.A. 10, ¶ 22.

On April 23, 2018, Decedent told Captain Smith that Ceaser had returned to Halifax County and Captain Smith "refused to take any action to have Ceaser detained and instructed Decedent to take Ceaser to Marine Corps Base Camp Lejeune." J.A. 10, ¶ 23. Via text message that same day, Evans demanded Captain Smith "pick [Ceaser] up cause he's back here in NC at mom's house. She worried. I'm worried. Y'all need to pick his [***] up before something happens!!" J.A. 10-11, ¶ 24.

On or about April 24, 2018, more than three weeks after Cesar first went AWOL, Captain Smith "again instructed Decedent to drive Ceaser to Marine Corps Base Camp Lejeune." J.A. 11, ¶ 25. Decedent was in her home in Halifax County "attempting to convince Ceaser to gather his belongings for the trip to Marine Corps Base Camp Lejeune" when Cesar "shot Decedent in the back of the head with a pistol, causing her death." J.A. 7, ¶ 3; J.A. 11, ¶ 26.

# SUMMARY OF ARGUMENT

1.    The district court properly granted the motion to dismiss for lack of subject matter jurisdiction because the ITE bars Evans' FTCA claim.

The FTCA waives the United States' sovereign immunity to suit for negligent conduct of federal employees acting within the scope of employment to the extent a private person would be liable under the law where the conduct occurred. The ITE removes from this waiver claims arising out of assault or battery. To pursue a money damages claim for a battery (i.e., murder) committed by a Marine, another federal employee must have negligently failed to prevent a foreseeable murder and this negligence must be unrelated to the murderer's federal employment status. Critical to imposition of liability, the United States' ability to control the tortfeasor must be independent of the employment relationship. Here, it is not. The district court properly dismissed the FTCA claim because the Marines' ability to control Ceaser at the time of the murder was limited to his status as a Marine.

2.    The FTCA claim properly is dismissed for Evans' failure to plead a plausible negligence claim under controlling substantive North Carolina law.

Under the FTCA, the United States can be held liable in tort for Decedent's death to the extent a private person would be liable under North Carolina law. Relevant here, there is no general duty to protect another. Under North Carolina law, a duty to protect another can be voluntarily assumed, and a duty to protect can arise within a special relationship. However, Evans failed to plead

facts that plausibly indicate a duty was voluntarily assumed or arose within a special relationship.

The Marines did not voluntarily assume a duty to protect Decedent from Ceaser when Captain Smith directed Decedent to drive Ceaser to Camp Lejeune. Voluntary assumption of a duty requires: 1) one to undertake to render services; 2) one should recognize as necessary for the protection of another; and 3) one fails to exercise reasonable care in that undertaking. First, Decedent, not Captain Smith, undertook to render a service—to return Ceaser to the Marines. Second, no fact forecasts that Ceaser presented a threat to his grandmother, whose company he repeatedly sought. Last, no fact supports that a "direction" to drive Ceaser to Camp Lejeune was unreasonable under the facts. No trip to Camp Lejeune had been tried and Ceaser twice rode with his family for several hours on trips to the RDU Airport ostensibly to return to Ft. Benning. Hence, there was no reason to suspect Ceaser would react violently rather than get in the car with his grandmother and later abscond. The facts as pled support that Ceaser was a runner, not a shooter

The Marines had no special relationship with Ceaser, independent of his employment status, that would give rise to a duty to protect Decedent from Ceaser. On this basis alone, the ITE bars the claim. Also, absent are facts that support the critical element for a duty to control to arise from a special relationship, namely, the ability and opportunity to control the assailant at the time of

the assault. Ceaser's distance from Captain Smith, who was in Georgia, fore-closed Captain Smith's ability and opportunity to control Ceaser at the time of the murder in North Carolina.

# ARGUMENT

## I. THE DISTRICT COURT PROPERLY GRANTED THE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE ITE PRECLUDES FTCA WAIVER OF SOVEREIGN IMMUNITY.

### A. Standard of Review.

This Court reviews de novo the dismissal of an action for lack of subject matter jurisdiction. <u>Durden v. United States</u>, 736 F.3d 296 (4th Cir. 2013). "In so doing, '[this court is] not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record.'" <u>Suter v. United States</u>, 441 F.3d 306, 310 (4th Cir. 2006) (citation omitted).

### B. Discussion of Issue.

#### 1. Evans Failed to Meet His Burden to Show a Waiver of Sovereign Immunity under the FTCA.

The United States, as sovereign, is immune from suit except where it consents to be sued. <u>United States v. Orleans</u>, 425 U.S. 807, 814 (1976). "[T]he terms of [the government's] consent to be sued in any court define that court's jurisdiction to entertain suit." <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). Indeed, "[s]overeign immunity is jurisdictional in nature." <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994). Thus, when sovereign immunity prevents a plaintiff from recovering, a court lacks subject matter jurisdiction to hear the plaintiff's claims. <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> <u>Bullock v. Napolitano</u>, 666 F.3d 281, 284 (4th Cir.), <u>cert.</u> <u>denied</u>, 133 S. Ct. 190 (2012) ("Sovereign immunity is not only a bar

to liability but also a bar to the court in which suits against the United States can be filed").

The FTCA creates a limited waiver of sovereign immunity for injuries caused by the tortious conduct of federal employees acting within the scope of their employment, when a private person would be liable for such conduct under state law. 28 U.S.C. § 1346(b)(1); see also Suter, 441 F.3d at 310. When invoking the FTCA's waiver, a plaintiff bears the burden of showing "that an unequivocal waiver of sovereign immunity exists and that none of the statute's waiver exceptions apply to his particular claim." Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005) (citations omitted).

In this claim for injury resulting from murder, Evans failed to meet his burden to show that the ITE is inapplicable. The ITE excepts from the FTCA's "broad grant of [subject matter] jurisdiction . . . 'any claim arising out of assault, battery' or other specified intentional torts." Sheridan v. United States, 487 U.S. 392, 398 (1988) (citing 28 U.S.C. § 2680(h)). The United States can be liable for injury directly resulting from an assault or battery, notwithstanding the ITE, when "[t]he negligence of other Government employees . . . allowed a foreseeable assault and battery to occur" if that antecedent negligence "is entirely independent of [the tortfeasor's] employment status." Id. at 401. The crux of Sheridan's holding is that the assailant's federal employment can "ha[ve] nothing to do with the basis for imposing liability on the Government". Id. at 402. In Durden, this Court clarified that it is the government's ability—its legal

duty—to control the tortfeasor that "must be independent of the tortfeasor's status as a government employee". 736 F.3d at 309. Here the district court properly dismissed Evans' FTCA claim as barred by the ITE, thereby depriving it of subject matter jurisdiction, because the Marines' legal duty to control Ceaser was not independent of Ceaser's federal employment as a Marine. J.A. 131-33.

## 2. The ITE Bars Evans' FTCA Claim.

Evans failed to plead facts plausibly showing that Ceaser's federal employment status is irrelevant to his FTCA claim. Evans argues that his claim relies exclusively on negligent acts of Marines other than Ceaser, specifically pointing to his pleading that Captain Smith directed Decedent several times to take Ceaser to Camp Lejeune and this "direction" was both negligent and proximately caused the injury. Corrected Brief at 17-19. Evans' argument fails under Sheridan and Durden.

First, Evans' argument fails Sheridan's independence test. In Sheridan, government employees found an "obviously" inebriated individual in possession of a firearm on a military hospital campus. Sheridan, 487 U.S. at 395. Federal employees attempted to take the drunken individual into custody, but their efforts failed and they took no further corrective measures. Id. Later, while still on campus, the drunken individual shot at passing cars and injured plaintiff. Id. at 393-94. The Court held the ITE did not apply, despite the assailant's status as a federal employee, because a duty to protect plaintiff from foreseeable tortious conduct (i.e., being shot) arose from the actions of the non-assailant government

employees (i.e., failing to report the firearm), entirely independent of the assailant's status as a federal government employee. Id. at 401. As the Court underscored, "the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government" just because the intentional tortfeasor happened to be "on the federal payroll." Id. at 402.

Here, in accord with Sheridan, the district court properly held that Evans' "claim of negligence by [Captain] Smith related to Ceaser's assault and battery is not 'entirely independent' of Ceaser's employment." J.A. 131. Nor was "Ceaser's 'status as a government employee . . . wholly irrelevant to imposing liability" on the United States for Captain Smith's alleged negligence. J.A. 131. The district court correctly noted that Decedent and family specifically "relied" on the employment relationship, and the government's concomitant ability to control Ceaser as an active duty Marine, when they contacted Ceaser's boss, Captain Smith, and "requested help from Smith[.]" J.A. 131. Further, it was Decedent's request for help from Captain Smith that "spurred" his "direction to [Decedent] to drive Ceaser to Camp Lejeune, into the custody of the Marine Corps, Ceaser's employer." J.A. 131. Last, for the same reason, Smith's direction to Decedent did not create a duty entirely independent of Ceaser's employment. Smith's direction was generated at Decedent's request with the "ultimate goal" of "deliver[ing] Ceaser back into the control of his employer, the Marine Corps." J.A. 131. Indeed, the sole reason Evans and family contacted the Ma-

rines about Ceaser, who was located in a private residence, in another state hundreds of miles from his duty station, was because Ceaser still was an enlisted Marine. J.A. 7, ¶¶ 5, 9, 10; J.A. 11, ¶26. Evans specifically pled the Marines' authority to take Ceaser into custody or have Ceaser taken into custody was because Ceaser was an absentee (AWOL) Marine. J.A. 14, ¶¶ 46, 47. If Ceaser were a bank teller, a store clerk, or a dog walker, there would have been no reason to contact the Marines to apprehend Ceaser.

Second, Evans' argument fails the <u>Durden</u> "control" test. In <u>Durden</u>, the district court overstated the ITE's reach, incorrectly holding that the government's knowledge of criminal propensities, gained through employment, was sufficient for the ITE to apply to nullify an FTCA claim. <u>Durden</u>, 736 F.3d at 309. This Court clarified that "although the government's ability (i.e., legal duty) to control the tortfeasor must be independent of the tortfeasor's status as a government employee, knowledge of the tortfeasor's propensity for violence or criminal history gained as a result of such status does not, per se, nullify an FTCA claim." <u>Id.</u>

Here, the district court properly held the ITE applied because the facts pled showed that the sole basis for the Marines to exercise control over Ceaser—that is, to retrieve Ceaser from a private residence, to ask law enforcement to take Ceaser into custody, or even to ask a private citizen, like Decedent, to bring Ceaser to a Marine base—was because of the employment relationship between Ceaser and the Marines. J.A. 131. As such the district court did not err in finding the ITE applied. Specifically, the district court noted that it did not "grant

the motion to dismiss plaintiff's FTCA claim because Smith's knowledge of Ceaser's propensity for violence was gained as a result of Ceaser's status as a member of the Marine Corps[.]" J.A. 132 (citation omitted).

Evans cites to no authority to support a basis for Captain Smith or the Marines to assert control over Ceaser, other than to invoke control via his employment as a Marine.[2] J.A. 131-32; <u>see</u> <u>Durden</u>, 736 F.3d at 305. Because Evans did not plead any facts that support a basis for the Marines' ability to control Ceaser independent of Ceaser's then-status as a Marine, the district court properly determined the ITE precluded FTCA waiver of sovereign immunity and properly granted the motion to dismiss for lack of subject matter jurisdiction. J.A. 131; Fed. R. Civ. P. 12(b)(1).

### 3. The District Court's Ruling Did Not Violate the Standard of Review.

Evans, without argument, recites a quotation which cautions district courts to refrain from determining subject matter jurisdiction when jurisdictional facts and facts on the merits are "inextricably intertwined". Corrected Brief at 20. That caution is appropriate when a defendant challenges the veracity of the facts alleged to support subject matter jurisdiction and the district court resolves factual disputes. <u>See</u> <u>Kearns v. United States</u>, 585 F.3d 187, 193 (4th Cir. 2009).

---

[2] The United States military does not have jurisdiction to act as a police force domestically. <u>See</u> <u>United States v. Johnson</u>, 410 F.3d 137, 146 (4th Cir. 2005) (discussing the <u>Posse</u> <u>Comitatus</u> Act, 18 U.S.C. § 1385 (2000), as amended by the Military Support for Civilian Law Enforcement Agencies Act, codified at 10 U.S.C. § 371, <u>et</u> <u>seq.</u>).

Otherwise, "when a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume the truthfulness of the facts alleged." Id.

Here, the district court considered the pleadings under the appropriate standard when reviewing the United States' challenge to subject matter jurisdiction. First, the United States specifically stated, "the United States makes a facial challenge" to subject matter jurisdiction, namely, it challenged the sufficiency, not the veracity, of facts to demonstrate subject matter jurisdiction. J.A. 34. Second, the district court did not find any fact untrue, inaccurate, or fail to credit any fact pled. J.A. 124-33. The district court appropriately viewed all of the facts pled in the light most favorable to Evans, as patterned after Rule 12(b)(6). From there, the district court concluded that "plaintiff d[id] not plausibly allege that Ceaser's employment status 'ha[d] nothing to do with the [alleged] basis for imposing liability on the Government'". J.A. 132. This is the central finding required to overcome the ITE. See Sheridan, 487 U.S. at 402. In the light most favorable to him, Evans failed to meet his burden.

In sum, the district court properly dismissed this action as barred under the intentional tort exception to the FTCA, and such dismissal should be affirmed.

## II. THE FTCA CLAIM PROPERLY IS DISMISSED FOR EVANS' FAILURE TO PLEAD A PLAUSIBLE CLAIM UNDER NORTH CAROLINA LAW.

### A. Standard of Review.

This Court reviews dismissals for failure to state a claim de novo, viewing the facts in the light most favorable to the plaintiff. Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 234 (4th Cir. 2021). In so doing, the Court "may affirm on any grounds supported by the record, notwithstanding the reasoning of the district court." Tankersley v. Almand, 837 F.3d 390, 395 (4th Cir. 2016) (citing Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 75 n.13 (4th Cir. 2016)).

### B. Discussion of Issue.

#### 1. North Carolina Law Applies to the FTCA Claim Alleged.

The FTCA incorporates the substantive law of the place where the alleged negligence occurred, including the state's choice-of-law rules, to determine the rights and liabilities of the parties. 28 U.S.C. §§ 1346(b)(1), 2674; Richards v. United States, 369 U.S. 1, 11–13 (1962). Though the alleged omissions were by Ceaser's command in Georgia, both Georgia and North Carolina's choice-of-law clauses, under the facts presented, look to the law of the place of injury. Auld v. Forbes, 309 Ga. 893, 894 (2020); Santana, Inc. v. Levi Strauss & Co., 674 F.2d 269, 272 (4th Cir. 1982). In this wrongful death case, the injury (death) occurred in North Carolina, so North Carolina tort law governs.

### 2. The United States Did Not Owe a Duty to Decedent Under North Carolina Substantive law.

In order to overcome the ITE, Evans bears the burden to plead facts that plausibly support the Marines breached a duty that was "entirely independent" of Ceaser's employment status and "allowed a foreseeable assault and battery to occur." Sheridan, 487 U.S. at 401. To this end, Evans argues the Marines voluntarily assumed a duty to protect Decedent from Ceaser. This argument fails, as it did in Durden, for two reasons. First, the facts pled do not show any duty arose, critically, because the facts do not reasonably forecast that Ceaser presented a threat to Decedent. Durden, 736 F.3d at 305-06. Second, Evans failed to cite to any legal authority that supports that an employer, such as the Marines, would be liable under North Carolina law under the facts pled. Id.

Under North Carolina law, a defendant cannot be held liable without owing a duty to plaintiff, breaching that duty, and proximately causing an injury. Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328 (2006). "'In the absence of a legal duty owed to the plaintiff by [the defendant], [the defendant] cannot be liable for negligence'. . . . [and] [n]o legal duty exists unless the injury to the plaintiff was foreseeable and avoidable through due care." Id. 360 N.C. at 328. Relevant to Evans' failure to protect claim, under North Carolina law generally, "there is neither a duty to control the actions of a third party, nor to protect another from a third party." Durden, 736 F.3d at 304 (quoting Scadden v. Holt, 733 S.E.2d 90, 92 (N.C. Ct. App. 2012)).

### i. The United States Did Not Assume a Duty to Decedent.

A person may assume a duty to protect when he "undertakes to render services to another which he should recognize as necessary for the protection of a third person". <u>Durden</u>, 736 F.3d at 305 (quoting <u>Quail Hollow E. Condo Ass'n v. Donald J. Scholz Co.</u>, 47 N.C. App. 518 (N.C. Ct. App. 1980)). Liability is imposed when "injur[y] result[s] from . . . failure to exercise reasonable care in such undertaking." <u>Quail Hollow</u>, 47 N.C. App. at 518. Evans argues the Marines voluntarily "assumed" a duty to protect Decedent from Ceaser when Captain Smith directed Decedent to drive Ceaser to Camp Lejeune. J.A. 17-19. Evans further argues this conduct lacked reasonable care because Captain Smith knew or "should have known" at that time that Ceaser posed an "immediate risk of harm" to Decedent. J.A. 17-19. The Marines did not assume a duty to protect Decedent, principally, because the facts pled do not support that it was reasonably foreseeable that Ceaser posed a threat to Decedent or that Captain Smith's conduct was unreasonable under the circumstances.

Evans failed to plead facts that plausibly support the first element of assumption-of-a-duty—that the Marines undertook to render services to Decedent. Rather, the facts pled demonstrate the opposite. It was Decedent, not Captain Smith, who undertook to render a service. Decedent contacted Captain Smith, repeatedly, in order to return Ceaser, an absentee (AWOL) Marine, to Ceaser's employer. J.A. 8-11, ¶¶ 12, 16-20, 22-23, 25; J.A. 14, ¶ 46. Captain Smith arranged for a plane ticket, but only at Evans/Decedent's request J.A. 8, ¶¶ 12-13. Thereafter, the Marines did not take action to return Ceaser back to base. J.A.

8-11, ¶¶ 12, 16-20, 22-23, 25. It was Decedent who voluntarily undertook to return the absentee to his employer. J.A. 11, ¶ 26. Hence, Evans failed to support the first element of assumption-of-a-duty. See Davidson v. Univ. of North Carolina, 142 N.C. App. 544 (2001) (defendant testified that it advised cheerleaders regarding safety).

Furthermore, Evans fatally failed to plead facts that plausibly show the second element, foreseeability of the battery on Decedent. Duty in the context of ordinary negligence arises out of knowledge that one's actions are likely to cause harm. Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226 (2010). "The duty of ordinary care . . . does not require perfect prescience, but instead extends only to causes of injury that were reasonably foreseeable[.]" Id. "Whether a plaintiff's injuries were foreseeable depends on the facts of the particular case." Stein, 360 N.C. at 328 (citation omitted).

Here, as in Durden, Ceaser's battery was not foreseeable. 736 F.3d at 306. In Durden, an Army specialist broke into plaintiff's home and raped her. 736 F.3d at 296. This Court found no duty to protect plaintiff under North Carolina law, despite the assailant being under restricted movement on base at the time of the assault, because plaintiff failed to plead facts that demonstrated the Army should have recognized its conduct—i.e., its restrictions on the assailant—prior to the assault were necessary to protect others from rape. Id., 736 F.3d at 306. Knowledge of prior criminal acts or specific threats against the injured party were required for a duty to arise. Id. Hence, even though the Army knew the assailant had committed a prior burglary and threatened to kill himself and

members of his unit, this Court rejected the assumption-of-a-duty argument based on the short length of time that had passed since the assailant returned to Army custody (six weeks) and the lack of any facts indicating that the Army should have known the assailant posed a particular threat to plaintiff. Id. The Court also found that suicidal and homicidal thoughts did not qualify as prior criminal acts and, further, did not forecast plaintiff's rape. Durden, 736 F.3d at 302-03. This Court noted that its holding may have been different if the Army had known before plaintiff's rape that the assailant committed two prior sexual assaults. Id. Then, "the Army may have had reason to know that [the assailant] was a serial offender and thus owed to [plaintiff] a duty to control" the assailant when the assailant was released from civilian jail back into the Army's custody. Id.

The facts pled here, like in Durden, do not support at the time of the alleged negligence that the Marines "knew or should have known" that Ceaser presented an "immediate risk of harm" to anyone, no less to his grandmother. There are no allegations of prior criminal activity indicating he was dangerous. J.A. 6-29. There are no allegations Ceaser made any threats or took any violent action toward Decedent. Id. The facts pled indicated the contrary. Ceaser was permitted in Decedent's home, even when other family members were not present. J.A. 11, ¶ 26. Thus, no one perceived Ceaser to present a threat specifically to Decedent.

Further, the pleadings with regard to Captain Smith's knowledge about Ceaser prior to the battery do not support that Smith "knew or should have

known" that Ceaser, Decedent's grandson, posed a threat to Decedent. As pled, Captain Smith knew (1) Ceaser ran from his troubles—having left his duty station under investigation for fraud J.A. 9, ¶ 18; (2) Ceaser was non-confrontational with his family—having taken several trips to RDU Airport rather than say "no" to them J.A. 8, ¶ 14; J.A. 10, ¶ 21; (3) Ceaser had not acted on his suicidal ideation during the many weeks since Ceaser's note was found J.A. 8-12, ¶¶ 11-25; (4) Ceaser consistently worked to get to and remain with his family J.A. 8, ¶¶ 12, 15; J.A. 10, ¶ 23; (5) Ceaser lived several weeks with his family without violent word or deed against them after leaving his Georgia duty station J.A. 8-11, ¶¶ 12-25; and (6) the several trips with his family, ostensibly, to return to the Marines were uneventful. J.A. 8, ¶ 14; J.A. 10, ¶ 21. Contrary to Evans' argument, these facts demonstrate that Ceaser was a runner, not a shooter.

Evans argues that he alleged facts that made "Ceaser's assault of the Decedent foreseeable[.]" J.A. 15-16. Evans points to Ceaser's note setting out suicidal thoughts and potential violence toward others, Ceaser's possession of grenade parts, Ceaser's social media posts indicating gun purchases, and Ceaser's "acting aggressively and … easily agitated." J.A. 15. Every fact pled demonstrates that Decedent, Evans, Evans' family, and Captain Smith shared information among themselves during the three weeks that Ceaser was AWOL. This information indicated Ceaser was an unhappy individual. However, not a single threat, act of violence, or criminal act suggested Ceaser was a danger to Decedent. J.A. 7-12, ¶¶ 8-33; Corrected Brief, at 15. Further, taken in the aggregate, the facts pled support that Ceaser was non-confrontational. In other words,

he ran from rather than address conflict. And each time, he ran toward his family who provided him with shelter. J.A. 8, ¶¶ 13-14; J.A. 10,  ¶ 21.

Finally, Evans failed to plead facts that support the third and last element of assumption-of-a-duty: unreasonableness of conduct under the circumstances. Quail Hollow, 47 N.C. App. at 518. No facts show a "direction" to drive Ceaser to Camp Lejeune was unreasonable. Indeed, nothing suggests Ceaser did not want to go to Camp Lejeune or would resist to the point of violence a trip there. J.A. 8, ¶ 14; J.A. 10, ¶ 21; J.A. 6-29. Rather, Ceaser voluntarily took several long and uneventful car trips with his family to return to the Marines. J.A. 8, ¶ 14; J.A. 10, ¶ 21. Evans did not plead a single threat or act of violence by Ceaser during the weeks when he was AWOL. Id. While the facts strongly suggest that Ceaser did not want to return to Ft. Benning, where he would be forced to live among and go to school with the people with whom he had troubles, J.A. 9, ¶ 18, these allegations do not give rise to a reasonable inference that Ceaser did not want to return to a different Marine base or would have committed a violent assault on his family if presented with a trip to Camp Lejeune. The facts pled forecast no reason to suspect Ceaser would react violently rather than get in the car with his grandmother and later ask to stop for gas or refreshments and, then, abscond. The facts pled support that Ceaser was a runner not a shooter. Thus, Evans did not establish that the Marines owed a duty to protect Decedent from Ceaser under North Carolina law.

### ii. No North Carolina Authority Supports Employer Liability Under the Facts Pled.

Though not an element, this Court in <u>Durden</u> rejected plaintiff's assumption-of-a-duty argument for failure to "present[] any authority suggesting that, 'under similar circumstances, a private person in North Carolina would be found to have owed a duty of ordinary care to a person in [Durden's] position.'" 736 F.3d at 306. Likewise, Evans did not cite any legal authority to support that a private employer in North Carolina, under similar circumstances, "would be found to have owed a duty of ordinary care to persons in [Decedent's] position." <u>Id.</u> Evans presents no legal support under North Carolina law for his argument that an employer, upon request of an employee's family, has a duty to retrieve an employee from the employee's residence or to have local law enforcement take an employee into custody. Corrected Brief 20-24. Evans also offers no legal support for his argument that an employer assumes a duty to protect an employee's family member if the employer responds to the family's questions with a statement that the family can deliver the family member-employee to a local branch of the employer. <u>Id.</u> Failure to cite to legal authority indicating a private person in North Carolina, under similar circumstances, "would be found to have owed a duty of ordinary care to persons in [Decedent's] position", demonstrates that Evans' FTCA claim properly is dismissed for failure to state a claim. <u>Durden</u>, 736 F.3d at 306; Fed. R. Civ. P. 12(b)(6).

# **CONCLUSION**

The district court did not err in granting the motion to dismiss for lack of subject matter jurisdiction. Evans' claim is barred by the ITE. Alternatively, Evans failed to plead a claim for negligence under North Carolina substantive law. The judgment of the district court should be affirmed.

No oral argument is necessary.

Respectfully submitted, this 8th day of February, 2023.

Michael F. Easley, Jr.
*United States Attorney*

BY: */s/ Sharon C. Wilson*
SHARON C. WLSON
*Assistant United States Attorney*
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: 919-856-4530

# CERTIFICATE OF COMPLIANCE

1.  Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure, I hereby certify that this brief meets the page or type-volume limits of Rule 32(a) because, exclusive of the portions of the document exempted by Rule 32(f), this brief contains:

    ⊠   26          Pages *(may not exceed 30 pages for a principal brief or 15 pages for reply brief, pursuant to Rule 32(a)(7)(A))*; or

    ⊠   5,831       Words *(may not exceed 13,000 words for a principal brief or 6,500 words for reply brief, pursuant to Rule 32(a)(7)(B))*.

2.  Further, this document complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in Microsoft Word 2016 using fourteen-point *Calisto MT*, a proportional-width typeface.

*/s/ Sharon C. Wilson*
Sharon C. Wilson
*Assistant United States Attorney*